UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SAMUEL T. LUBAMBA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:26-cv-00102-JAW |
| ) | |
| DERRICK STAMPER, *in his* ) | |
| *official capacity as Chief Patrol* ) | |
| *Agent of Houlton Sector, U.S. Border* ) | |
| *Patrol*, et al., ) | |
| ) | |
| Respondents. ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Finding the government's detention of a noncitizen without a hearing violates due process, the court grants the noncitizen's petition for writ of habeas corpus and orders the government to provide the noncitizen a bond hearing before an Immigration Judge within fourteen days of this order.

**I.   BACKGROUND**[1]

Samuel T. Lubamba, a twenty-three-year-old resident of Lisbon, Maine, is a citizen of the Democratic Republic of Congo who fled to the United States in 2019 when he was about sixteen, after his family experienced political persecution in his home country. *Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* ¶¶ 1, 16-20 (ECF No. 1) (*Pet.*). Mr. Lubamba's father, Martin Nsapu Lubamba, was arrested, interrogated, and tortured by the Congolese government due to his promotion of

---

[1]   For the purposes of Mr. Lubamba's petition for writ of habeas corpus, the Court reviews the relevant facts as pleaded in his verified petition, verified response, and the exhibits to each.

human rights in The Democratic Republic of Congo (DRC), *id.* ¶ 16, and Martin Lubamba fled the DRC in 2014. *Id.* ¶ 17. After his father's escape, DRC government agents continued to target the Lubamba family, kidnapping and torturing Mr. Lubamba's mother in an attempt to locate Martin Lubamba. *Id.* ¶ 18. In 2019, Mr. Lubamba, his mother, and siblings fled the DRC, flew to Brazil, and ultimately came to the United States, where Martin Lubamba was living. *Id.* ¶¶ 19-20.

On March 20, 2019, Mr. Lubamba and his family attended a U.S. Customs and Border Protection (CBP) One appointment, where CBP granted Mr. Lubamba and his family humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A), which he maintains set no conditions requiring assurances that he would appear at his hearings. *Id.* ¶¶ 21-24; Attach. 2, *Parole Document*. Thereafter, Mr. Lubamba and his family moved to Maine, where they have resided ever since. *Id.* ¶ 25. Before Mr. Lubamba arrived in the United States, his father had filed an asylum application and in July 2019, his mother filed her own asylum application. *Id.* ¶¶ 27-28. Mr. Lubamba is included as a derivative applicant on each of his parent's pending asylum applications. *Id.* ¶¶ 27-28, 31-33. The U.S. Department of Homeland Security (DHS) initiated removal proceedings against him when CBP paroled him into the United States, but an Immigration Court terminated those removal proceedings on June 17, 2024 because of a defective charging document. *Id.* ¶¶ 26, 29; Attach. 3, *Notice to Appear*; Attach. 4, *Order of the Immigration Judge*. The DHS did not appeal the termination of the proceedings or file an amended charging document. *Id.* ¶ 30.

On February 26, 2026, CBP agents arrested Mr. Lubamba while he was making a delivery for work. *Id.* ¶ 41. He remains in CBP custody in Somerset County Jail, in Madison, Maine. *Id.* ¶ 43; *Min. Entry* (ECF No. 8). That same day, Mr. Lubamba filed a verified petition for writ of habeas corpus, arguing his detention violates the Immigration Nationality Act (INA) and his due process rights under the Fifth Amendment of the United States Constitution. *Pet.* ¶¶ 49-83. He seeks a writ of habeas corpus ordering his immediate release or, in the alternative, an order requiring an Immigration Judge to provide him a bond hearing as soon as possible. *Id.* at 15. Upon docketing Mr. Lubamba's petition, the Court issued a seventy-two-hour emergency order, enjoining Respondents from transferring Mr. Lubamba outside the District of Maine. *Emer. Order Concerning Stay or Transfer of Removal* (ECF No. 3) (*Emer. Order*).

At the teleconference of counsel on February 27, 2026, Respondents confirmed Mr. Lubamba was in their custody in Somerset County Jail, in Madison, Maine at the time Mr. Lubamba filed his petition, clarifying there were no issues of personal jurisdiction or venue for the Court to consider. *Min. Entry*. The parties also agreed to extend the Court's emergency order blocking Mr. Lubamba's transfer outside the District of Maine until the Court's resolution of its forthcoming order to show cause. *Id.* Immediately following the teleconference, the Court ordered Respondents to show cause why Mr. Lubamba's petition should not be granted, *O.S.C.* (ECF No. 9), and, consistent with the parties' agreement, extended the emergency no-transfer order until the Court issues its ruling on the order to show cause. *Order* (ECF No. 10).

On March 5, 2026, Respondents filed their response to the order to show cause, opposing Mr. Lubamba's petition. *Return and Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 11) (*Resp'ts' Opp'n*). On March 6, 2026, Mr. Lubamba filed his reply.[2] *Pet'r's Verified Reply in Supp. of Pet. for Writ of Habeas Corpus* (ECF No. 14) (*Pet'r's Reply*).

## II.  THE PARTIES' POSITIONS

Mr. Lubamba alleges his detention violates the INA and his due process rights under the Fifth Amendment of the United States Constitution. *Pet.* ¶¶ 49-83. Mr. Lubamba maintains he is illegally categorized as a mandatory detainee pursuant to 8 U.S.C. § 1225(b), rather than a discretionary detainee under § 1226(a) who is entitled to a bond hearing before an Immigration Judge. *Id.* ¶¶ 75-83. Mr. Lubamba argues that his detention without a bond hearing violates his Fifth Amendment due process rights. *Id.* ¶¶ 49-74. He seeks, among other remedies, a writ of habeas corpus ordering his immediate release or, in the alternative, an order requiring an Immigration Judge to provide him a bond hearing as soon as possible. *Id.* ¶¶ 14-15.

In their opposition, Respondents maintain Mr. Lubamba is properly categorized as a mandatory detainee under § 1225(b)(2), as dictated by controlling agency precedent. *Resp'ts' Opp'n* at 1-2. However, Respondents acknowledge that "caselaw from this Court [has] uniformly sustain[ed] challenges to DHS's

---

[2] On March 5, 2026, Mr. Lubamba filed a verified reply in support of his petition. *Pet'r's Verified Reply in Supp. of Pet. for Writ of Habeas Corpus* (ECF No. 12). The next day, March 6, 2026, Mr. Lubamba filed a notice stating his March 5, 2026 reply was filed in error, and, shortly thereafter, he refiled his reply. *Notice of Docket Entry Modification* (ECF No. 13); *Pet'r's Verified Reply in Supp. of Pet. for Writ of Habeas Corpus* (ECF No. 14).

4

interpretation of § 1225" and they concede Mr. Lubamba's petition is not substantially distinguishable from that line of caselaw. *Id.*

In his reply, Mr. Lubamba argues that Respondents have failed to show cause why his petition should not be granted. *Pet'r's Reply* at 7-11. Consistent with the body of caselaw within this District, combined with Respondents' concession that Mr. Lubamba's petition is not substantially distinguishable from that line of cases, Mr. Lubamba argues he is entitled to immediate release pending his bond hearing before an Immigration Judge. *Id.* at 11-12. Should the Court not order his immediate release, he maintains that, in the alternative, he is still entitled to a bond hearing before an Immigration Judge. *Pet'r's Reply* at 12.

### III.   DISCUSSION

#### A.   Jurisdiction

As an initial matter, the Court concludes that it retains jurisdiction over Mr. Lubamba's habeas petition. "District courts are limited to granting habeas relief 'within their respective jurisdictions,'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)), and "with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)). Furthermore, under habeas law, jurisdiction in a particular district attaches when a petitioner is physically present in the district at the same moment a petition is filed there on his behalf. *Rumsfeld*, 542 U.S. at 435 (2004); *United States v. Hayman*, 342 U.S. 205, 213 (1952). Here, the

5

Court retains jurisdiction over this matter, because Mr. Lubamba filed his habeas petition when he was in custody in the District of Maine.

### B.  The Merits

Consistent with the mass of recent caselaw addressing this question on similar facts, the Court concludes that § 1225(b)(2) is inapplicable to Mr. Lubamba, and he is therefore subject to discretionary detention under § 1226(a) and entitled to a bond hearing before an Immigration Judge.

#### 1.  Statutory Framework

##### a.  Mandatory Detention under Section 1225(b)(2)

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted" or "who arrives in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (plurality opinion). Relevant here is § 1225(b)(2).[3] Under § 1225(b)(2) "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for the duration of removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Thus,

---

[3]   Section 1225(b)(1) subjects arriving noncitizens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" to expediated removal proceedings. *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Noncitizens subject to expedited removal can avoid removal with successful asylum claims. However, if a noncitizen detained under § 1225 does not indicate an intent to apply for asylum, express a fear of persecution, or is "found not to have such a fear," he is detained until removed. *Id.* §§ 1225(b)(1)(A)(i), (B)(iii)(IV). Mr. Lubamba is an asylum applicant, and Respondents assert only that Mr. Lubamba is subject to mandatory detention under § 1225(b)(2), not § 1225(b)(1).

§ 1225(b)(2) creates a mandatory detention scheme. *See Jennings*, 583 U.S. at 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). As other courts have recognized, this language requires that "several conditions must be met" to impose mandatory detention under § 1225(b)(2). *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 487 (S.D.N.Y. 2025). Specifically, the noncitizen must be: "(1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted." *Id.*; *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025).

### b. Discretionary Detention under Section 1226(a)

By contrast, § 1226 governs the "usual removal process" with an evidentiary hearing before an immigration judge. *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Section 1226(a) gives immigration authorities power to issue an administrative warrant and either continue detention for removal proceedings or release the noncitizen on "bond . . . or conditional parole." 8 U.S.C. § 1226(a)(1)-(2). Section 1226(a) thus "establishes a discretionary detention framework for noncitizens." *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025)). However, § 1226's discretionary detention regime has one exception: immigration authorities "shall take into custody" any noncitizen involved in certain enumerated criminal activities. 8 U.S.C. § 1226(c)(1). None of those criminal activities is at issue here.

Once arrested under § 1226(a), immigration authorities make an individualized initial custody determination after which they have discretion to release a noncitizen if the noncitizen can "demonstrate to the satisfaction of the officer

7

that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8) (2025). If the immigration officer opts for continued detention, the noncitizen may seek review of that decision at a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1) (2025). At a bond hearing, the government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). An immigration judge's decision to continue detaining a noncitizen may be appealed to the BIA. 8 C.F.R. § 236.1(d)(3).

In *Jennings*, the Supreme Court provided guidance on the difference between the statutes, explaining that § 1225(b)(2) "authorizes the Government to detain certain aliens *seeking admission* into the country under," while § 1226(a) "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis supplied); *see also id.* at 288 (explaining that, "once inside the United States" a noncitizen "*present in the country* may still be removed" under "Section 1226") (emphasis supplied)).

### c.     Parole Pursuant to Section 1182(d)(5)(A)

"Parole pursuant to Section 1182(d)(5)(A) serves a unique function." *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 U.S. Dist. LEXIS 233224, at *34 (E.D.N.Y. Nov. 28, 2025). Although § 1182(d)(5)(A) does not grant admission to the United States, it allows the Secretary of Homeland Security to permit certain noncitizens "on a case-by-case basis" to enter or remain in this country

8

only for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 288. For example, § 1182(d)(5)(A) is simultaneously the only method of parole for those subject to mandatory detention under § 1225(b), but it also covers asylum applicants who obtain advance parole to travel into and out of the United States. *Caiza v. Scott*, No. 1:25-cv-00500-JAW, 2025 U.S. Dist. LEXIS 211907, at *16 (D. Me. Oct. 28, 2025) (citing 8 C.F.R. § 212.5(f)).

However, parole is "not [to] be regarded as an admission of the alien[,] and when the purposes of such parole . . . have been served," § 1182(d)(5)(A) mandates that "the alien shall forthwith return or be returned to the custody from which he was paroled." *Id.* Thereafter the parolee's case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* In other words, parole under § 1182(d)(5)(A) "employs a legal fiction whereby non-citizens are physically permitted to enter the country but are nonetheless 'treated,' for legal purposes, 'as if stopped at the border.'" *Martinez*, 792 F. Supp. 3d at 215 (quoting *Thuraissigiam*, 591 U.S. at 139).

### 2. Applicable Statutory Basis for Detention

The parties agree Mr. Lubamba was paroled into the United States pursuant to § 1182(d)(5)(A), and neither party disputes that Mr. Lubamba is "an applicant for admission" or that he is "not clearly and beyond a doubt entitled to be admitted." Instead, the question here, as with many immigration habeas cases to reach the district courts in recent months, is whether Mr. Lubamba is "seeking admission" such that he is subject to mandatory detention under § 1225(b)(2)(A).

9

As Respondents concede, recent decisions from district courts within the First Circuit and elsewhere have consistently rejected Respondents' interpretation of § 1225(b)(2)'s mandatory detention scheme under similar factual circumstances. *See Mercado v. Francis*, No.25-cv-6582 (LAK), 2025 U.S. Dist. LEXIS 232876, at *9-10, n.22 (S.D.N.Y. Nov. 26, 2025) (explaining that similarly situated petitioners "have prevailed, either on a preliminary or final basis, in 350 [out of 362] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States") (collecting cases); *Lopez v. Trump*, No. 2:25-cv-863, 2025 U.S. Dist. LEXIS 233128, at *6 (D. Vt. Nov. 17, 2025) (rejecting DHS's application of § 1225(b) mandatory detention to re-detain noncitizen originally released under § 1226(a)); *Caiza*, 2025 U.S. Dist. LEXIS 195270, at *7-8 (collecting cases).

Here, there are two independent lines of recent caselaw supporting Mr. Lubamba's claim that he is subject to discretionary detention under § 1226(a), rather than mandatory detention under § 1225(b)(2). First, as a noncitizen continuously residing in the United States since March 20, 2019, Mr. Lubamba is not "seeking admission," and he is therefore not subject to mandatory detention under § 1225(b)(2). *See Moraes v. Joyce*, No. 2:25-cv-00583-JAW, U.S. Dist. LEXIS 234386, at *9-10 (D. Me. Dec. 2, 2025); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025). Rather, as a noncitizen "already in the country pending the outcome of removal proceedings," Mr. Lubamba is subject to discretionary detention under § 1226(a), *Jennings*, 583 U.S. at 289, and he is entitled to a bond hearing before an Immigration Judge. *See Hernandez-Lara*, 10 F.4th at 41.

A second line of recent caselaw holds that, as a § 1182 parolee released into the country in advance of filing his asylum claim, Mr. Lubamba is not "seeking admission," even though his parole has already expired. *See Montiel v. Raycraft*, No. 1:25-cv-1610, 2026 U.S. Dist. LEXIS 1726, at *8-9 (W.D. Mich. Jan. 6, 2026); *see also Qasemi v. Francis*, No. 25-cv-10029 (LJL), 2025 U.S. Dist. LEXIS 261199, at *30-35 (S.D.N.Y. Dec. 17, 2025) (rejecting the argument that § 1182(d)(5)(A)'s prescription that a noncitizen be returned to the "custody" from which they were paroled requires a return to the detention authority to which they would have been subject prior to any grant of parole); *Rodriguez v. Rokosky*, No. 25-17419 (CPO), 2025 U.S. Dist. LEXIS 250239, at *4-6 (D.N.J. Dec. 3, 2025) (same); *see also Walizada v. Trump*, No. 2:25-cv-00768, 2025 U.S. Dist. LEXIS 256630, at *38-39 (D. Vt. Dec. 11, 2025) (calling absurd the idea that the expiry of petitioner's parole now placed him in the "perpetual status" of an "arriving alien"); *Caiza*, 2025 U.S. Dist. LEXIS 211907, at *16 ("However, it does not necessarily follow that all those paroled under § 1182(d)(5)(A) were detained under § 1225 in the first instance"); *Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 U.S. Dist. LEXIS 173976, at *10 (N.D. Cal. Sep. 5, 2025) ("termination of parole does not generally require treating noncitizens as if they had never been paroled in the first place"); *Coalition for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 90-91 (D.D.C. 2025) ("a noncitizen 'arriving' in the United States would be one who is in the process of reaching his or her destination (the United States) and making an appearance here," not "someone who previously reached the

11

United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States").

Mr. Lubamba, having been paroled into the country by CBP in March 2019, is already present in the United States with a pending asylum application and therefore cannot be considered "seeking admission." Moreover, the expiration of his parole does not require him to return to a port of entry and undergo a new inspection or screening. *See Walizada*, 2025 U.S. Dist. LEXIS 256630, at *26-28; *Qasemi*, 2025 U.S. Dist. LEXIS 261199, at *18-19, 30-35. Neither do Respondents argue that Mr. Lubamba is required to undergo a new "credible fear" interview upon the termination of his parole. *Qasemi*, 2025 U.S. Dist. LEXIS 261199, at *18-19; *see also Caiza*, 2025 U.S. Dist. LEXIS 211907, at *14-19 (analyzing the circumstances of the initial grant of § 1182 parole to determine whether § 1226(a) and 1225(b) applied after expiration).

Furthermore, Mr. Lubamba pursued a lawful pathway to asylum. He applied for and attended his CBP One application appointment before entering the United States, waiting for approximately one month in Mexico before receiving § 1182 parole. *Pet'r's Reply* ¶¶ 6-9. His parents lodged asylum applications, naming Mr. Lubamba as a derivative applicant, before his parole expired. *Pet.* ¶¶ 28, 31-33; *Pet'r's Reply* ¶ 15-16, 20-22; Attach. 3, *Req. to Add Dependent*. He also maintains that his parole set no conditions requiring assurances he would appear at his hearings and Respondents do not dispute or argue any violations of his parole conditions. *Pet.* ¶ 24. Moreover, although his parole has expired, Mr. Lubamba's parents continue to pursue their asylum application on their own and his behalf. *Pet.* ¶¶ 28, 31-33; *Pet'r's*

12

*Reply* ¶ 15-16, 20-26. Furthermore, the facts of Mr. Lubamba's case are readily distinguishable from *Caiza*, in which this Court held that the "circumstances of [an expired § 1182 parolee's] initial encounters with immigration authorities" indicated he was subject to mandatory detention under § 1225(b)(2), in part because the government paroled him due to detention capacity, rather than to parole him in advance of filing an asylum application. *Caiza*, 2025 U.S. Dist. LEXIS 211907, at *15 ("[P]arole under § 1182 does not by itself demonstrate that he was initially detained under § 1225(b)(2)").

Therefore, any determination as to Mr. Lubamba's detention must be conducted under the discretionary detention framework of Section 1226(a), which "governs the process of arresting and detaining noncitizens who have already entered the United States pending their removal," including expired parolees within the United States pending the adjudication of their asylum claim. *Tumba v. Francis*, No. 25-cv-8110 (LJL), 2025 U.S. Dist. LEXIS 219101, at *7 (S.D.N.Y. Nov. 4, 2025) (quoting *Jennings*, 583 U.S. at 288).

### 3. Due Process

Because Mr. Lubamba is currently in the United States, he is "entitled to the full procedural safeguards of the Due Process Clause of the Fifth Amendment," *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 30 (D. Mass. 2025), which provides that he will not be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V; *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining "once an alien enters the country, the legal circumstance changes, for the Due Process Clause

applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"). As the petitioner, however, Mr. Lubamba bears the burden of demonstrating by a preponderance of the evidence that his detention violates the Due Process Clause of the Fifth Amendment. *See De Oliveira v. Joyce*, 2:25-cv-00291-LEW, 2025 U.S. Dist. LEXIS 125776, at *8 (D. Me. July 2, 2025) (citing *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting authority)).

To determine whether detention violates procedural due process, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Chafla*, 804 F. Supp. 3d at 262-64 (analyzing procedural due process challenge to the detention of noncitizen held pursuant § 1226(a) using the *Mathews* test); *Sampiao*, 799 F. Supp. 3d at 30-34 (same); *Hernandez-Lara*, 10 F.4th at 27-28 (same). Under *Mathews*, a court must weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### a.  Private Interest

In his petition, Mr. Lubamba asserts "the most elemental of liberty interests— the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom

from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Fifth Amendment's Due Process Clause] protects"). A noncitizen detained under § 1226(a) vindicates their due process rights through a bond hearing before an Immigration Judge who requires the government either to (1) prove by clear and convincing evidence that a noncitizen poses a danger to the community or (2) prove by the preponderance of the evidence that they pose a flight risk in order to detain them throughout the pendency of their removal proceedings. *See Hernandez-Lara*, 10 F.4th at 41. Here, Respondents have refused Mr. Lubamba the bond hearing § 1226(a) provides him and have failed to meet their burden for his continued detention as due process requires. Mr. Lubamba has therefore clearly established the first *Mathews* factor weighs in his favor.

### b. Risk of Erroneous Deprivation

The second *Mathews* factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of erroneous deprivation is large where, as here, Respondents have made no showing that Mr. Lubamba presents any public safety or flight risk. Accordingly, the second *Mathews* factor also weighs heavily in his favor.

### c. Government Interest

Finally, the third *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Respondents do

not raise any governmental interest favoring Mr. Lubamba's continued detention without a bond hearing. *See Chafla*, 804 F. Supp. 3d at 263 (identifying governmental interest in favor of immigration habeas petitioners' continued detention without a hearing as an "across-the-board application of an inapplicable statute"). In fact, the public interest weighs against detention without a hearing. *See Hernandez-Lara*, 10 F.4th at 33 (finding "unnecessary detention" of noncitizens "imposes substantial societal costs"). Thus, the third *Mathews* factor weighs against Respondents and in favor of Mr. Lubamba.

The Court concludes that Respondents' detention of Mr. Lubamba without a bond hearing pursuant to § 1226(a) therefore violates his due process rights.

## C. Current Status

Mr. Lubamba filed his petition on February 26, 2026, *Pet.*, and immediately following his filing, the Court issued an emergency order, ordering Respondents not to transfer him outside the District of Maine for at least seventy-two hours. *Emer. Order* at 1. On February 27, 2026, the Court held a telephone conference of counsel in which Respondents confirmed that Mr. Lubamba is being held at the Somerset County Jail in Madison, Maine, and the Court extended the emergency order enjoining Respondents from transferring him outside the District of Maine "until the Court issues its ruling on the order to show cause." *Order*.

Given that the Court is ordering Respondents to provide Mr. Lubamba with a bond hearing, if his presence at the bond hearing requires him to travel outside the District of Maine, his travel would technically violate the current geographic

16

restriction in the order of the Court. Therefore, the Court amends its Order dated February 27, 2026 as follows:

> The Court therefore ENJOINS Respondents from removing Samuel T. Lubamba outside the District of Maine pending further order of the Court. However, if his presence at the ordered bond hearing requires him to be outside the District of Maine, the Court ORDERS that Respondents may remove him from the District of Maine solely for the purpose of attending the hearing and to return him to the District of Maine immediately upon the conclusion of the hearing, if bond is denied.

In the interim, the Court ORDERS that Respondents not remove Samuel T. Lubamba outside the District of Maine, except if necessary to attend any scheduled bond hearing, pending further order of the Court.

## IV.    CONCLUSION

Finding Respondents' continued detention of Mr. Lubamba without a bond hearing violates federal law and the Fifth Amendment of the United States Constitution, the Court GRANTS Samuel T. Lubamba's Petition for Writ of Habeas Corpus (ECF No. 1) and enjoins Respondents from denying Mr. Lubamba a bond hearing on the basis that 8 U.S.C. § 1225(b)(2) applies to him and further ORDERS Respondents shall provide Mr. Lubamba a bond hearing in accordance with 8 U.S.C. § 1226(a)(2) within fourteen days of the date of this order.

If an Immigration Judge grants Mr. Lubamba bond, the Court ORDERS Respondents to return any of Mr. Lubamba's personal property that Respondents have in their possession at the time of Mr. Lubamba's release, including but not limited to Mr. Lubamba's phone, keys, wallet, employment authorization document, social security card, and other identification documents.

Lastly, the Court ORDERS Respondents to file a status report within five days of Mr. Lubamba's bond hearing, stating whether Mr. Lubamba has been granted bond, and, if his request was denied, the reasons for that denial.

SO ORDERED.

                                               /s/ John A. Woodcock, Jr.
                                               JOHN A. WOODCOCK, JR.
                                               UNITED STATES DISTRICT JUDGE

Dated this 6th day of March, 2026